RECEIVED

FEB 0 1 2008

AT 8:30 __11:00 A__ M
WILLIAM T. WALSH, CLERK

Antolin Andrew Marks
1623 E. J. Street, Suite 5
Tacoma, Washington 98421

1
2
3
4
5

UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF NEW JERSEY

08 605 (DMC)

6
7
8
9
10
11

Antolin Andrew Marks,

Plaintiff ,

vs.

Michael Melendez

Defendant.

**Case No.**
 **SUIT FOR DAMAGES UNDER
CONSTITUTION OF NEW MEXICO
STATE, NEW MEXICO CIVIL CODES
AND REVISED CODES
FOR: DENIAL OF DUE PROCESS
GUARANTEED BY THE FIFTH
AMENDMENT
For: 780,000. JURY TRIAL
DEMANDED**

**FACTS**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

**1.** The Plaintiff is currently held by Immigration and Custom Enforcement Agency. He is held at the Northwest Detention Center headed by ICE. Plaintiff brings this Complaint to the Court because his rights have been violated, deliberately violated by Immigration and Customs Enforcement, a arm of the Government that does business in this District, and seeks damages against the actions that injure the Plaintiff. Plaintiff claims that Michael Melendez, an employee of ICE has violated his rights as follows and stands liable to the Plaintiff as set forth herein. Michael Melendez lives and works in New Jersey and the court has jurisdiction over his person.

CLAIM ONE

## VIOLATION OF THE RIGHT TO PETITION

**2.** Although Plaintiff is not a prisoner, even prisoners have a First Amendment right to be free from certain interference with their "legal" mail. Wolff v. McDonnell, 418 U.S. 539, 577, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Watson v. Cain, 846 F. Supp. 621, 626 (N.D. Ill. 1993); see also Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. Wolff, 418 U.S. at 577; Bach v. People of State of Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974); cert. denied, 418 U.S. 910, 94 S. Ct. 3202, 41 L. Ed. 2d 1156 (1974). For example, correspondence between an inmate and an attorney (even a potential attorney or legal representative) is deemed confidential and therefore must be opened in the presence of the inmate. Wolff, 418 U.S. at 577; Bach, 504 F.2d at 1102; Watson, 846 F. Supp. at 629, 631.

**3.** Likewise, the Plaintiff has the right to his privileges and immunities as a citizen of the United States, Twining v. New Jersey, 211 U.S. 78, 53 L. Ed. 97, 29 S. Ct. 14 (1908). Twining gave these examples of privileges and immunities of national citizenship, viz.:

**4.** "The right to pass freely from state to state"; "the right to petition Congress for a redress of grievances"; "the right to vote for national officers"; "the right to enter the public

lands"; "the right to be protected against violence while in the lawful custody of a United States marshal." 211 U.S. at 97. See also, United States v. Cruikshank, 92 U.S. 542, 553, (23 L.Ed. 588; Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L. Ed. 745 (1867. It is the claim of the Plaintiff that ICE, has denied him the twin rights of the right to petition the government secured to him by the First Amendment and the right to seek redress.

5. First, the Plaintiff claims that it is unquestionable that he has a right to Petition Congress under the First Amendment. The question here is whether the Petitioner here has a right to have the Government Agency that holds him pay for the postage of the mail that he has submitted for delivery to Congress where he is an immigration detainee who seeks a private bill to his benefit for assistance in his immigration case. It is the claim of the Plaintiff that he has an unqualified right to petition the Congress of the  United States.

6. We begin with the fact that the Plaintiff is an immigration detainee being held by the government. He is indigent and has submitted letters to be delivered to Congress because the Immigration and Naturalization Act contemplates the fact that Congress can grant relief to any immigration detainee through a private bill. As such, the Plaintiff must Petition Congress

and Petition each member of Congress for a private bill which would alleviate the conditions of his confinement.

**7.** On or about February 2nd, 2007 the Plaintiff provided to Immigration and Customs Enforcement a document that sought that the document be copied. This document included a letter to the members of Congress who are Democrats, a copy of the Visa Application for Rudder, Wayne, a scan of four pictures showing the Plaintiff at the age of 19, one document showing Rudder at the age of 14, and the exact same documents to the Senators who are Democrats and Independents. Immigration and Customs Enforcement refused to copy the letters stating that it was unreasonable for the Plaintiff to seek copies of the letters. Nonetheless, the Plaintiff received the letters and ultimately presented 285 letters to be mailed to Congress. After substantial resistance, over a period of a month, the letters were purportedly sent. Yet, it is the date of June 29, 2007, 120 days later, and not one single response has come from those letters. None of the letters have been returned and this leads the Plaintiff to believe that Immigration and Customs Enforcement, did not mail the letters as he stated he did.  It is the Plaintiff's belief that the letters were not sent by Immigration and Customs Enforcement as it stated and Immigration and Customs Enforcement is charged here with deliberately infringing upon the Plaintiff's right to seek to Petition Congress.

**8.** Thus, on the date of June 10th, 2007 the Plaintiff spoke to the Postmaster of the Tacoma Mail Office. That individual informed the Plaintiff to resubmit the letters for mailing and he would keep an eye out to determine whether or not the mail was being sent. Immigration and Customs Enforcement has been very adept at listening to conversations on the telephone and acting on what they hear. Thus, on the date 6-28-07 the Plaintiff prepared another 285 letters-one for each Democrat in Congress and one for each Democrat in the Senate, plus the two independents, and submitted them for mailing. In the follow-up letters presented for mailing the Plaintiff questioned why he had not been granted any responses to the previous letters. Because the Plaintiff must submit the letters for copying to Immigration and Customs Enforcement, there is no question that Immigration and Customs Enforcement, read the letters and then realized that the Plaintiff was questioning why his mail had not been responded to. Thus, on the date of 6-28-07 Immigration and Customs Enforcement stated that the letters would not be mailed. What Immigration and Customs Enforcement stated was the following:

**9.** "You receive postage of all legal mail to the Courts. The documents to Congress are not legal and they are special correspondence. You are hereby limited to five pieces of special correspondence per week." Thereby, Immigration and Customs Enforcement, stated that he was not going to send the

letters to Congress in any timely manner, meaning that it would take Plaintiff a full year, one month and one week to send all the letters to Congress that he wishes to send. The question regarding this part of the suit is whether the actions of Immigration and Customs Enforcement qualifies as a violation of the right to petition.

10. More than the right to petition, the Plaintiff claims that the mail should have been sent as a first matter because it was "Legal Mail" and the Supreme Court has held that the facilities that hold individuals must bear the cost of the postage where the postage is legal mail.

11. The first question that must be answered then is whether the mail qualified as legal mail and whether the mail should have been regarded as legal mail, and whether Immigration and Customs Enforcement, should have known that the mail was legal and that the Plaintiff had a legal right to send the mail. Plaintiff is unaware of a written definition of the term "legal mail," but here the Plaintiff will state that where the mail states clearly that it is legal mail, and it is directed to a party who can have an impact, good or bad over the conditions of confinement or the confinement of the person, then the mail must be considered legal mail.

12. In this case, the mail to Congress clearly meets the definition of legal mail. First, a person wishing to have a private relief bill introduced must, of course, persuade a

member of Congress that he or she has a meritorious claim for relief. If the Senator or Representative believes the matter merits legislative consideration, the member of Congress introduces the private bill for the relief of a named individual or individuals. The bill is referred to the Judiciary Committee of the house of Congress in which it is introduced. Most such bills are introduced in the House of Representatives. Note, Private Bills In Congress, 79 Harv. L. Rev. 1684, 1688 (1966). The Senate rules of procedure for private immigration bills are generally less formal than those of the House. Any private bill request must include basic biographical information on the proposed beneficiary. The requisite composition of a private bill request varies slightly based upon the status of the proposed beneficiary. Subcomm. on Immigration, Senate Judiciary Comm., 105th Cong., Rules of Procedure: Private Immigration Legislation 1 (1999). Having located the fact that there is the possibility that Congress and the Senate can act on a person's immigration matter and grant relief, the question becomes does the person have the right to petition Congress for the relief he seeks and does that right bear the protection of the Constitution?

**13.**     Plaintiff here claims that he has a right to Petition Congress, a secondary right to seek relief under the private bill and has a right to transmit that information to Congress because he must persuade a member of Congress to introduce

such legislation to award relief. In order to gain the ear of Congress, the Plaintiff must be able to write the letter or the submission to the member of Congress and he must be assured that the letter he writes will actually be transmitted to Congress. Plaintiff first states that for Immigration and Customs Enforcement to state that he will not mail the letter to Congress is a violation of the right to petition, the right to send legal mail, and the right to seek redress, and a violation of due process under the Fifth Amendment and the First Amendment.

**14.**     In support of the right, ICE National Standards which state, "Indigent detainees will be permitted to mail the following at government expense: 1. All correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative and any court." It is clear here that the letters to Congress constituted legal mail as they were "correspondence related to a legal matter", where that legal matter is the Plaintiff's immigration matter.

**15.**     Further, the Standards state, Special correspondence" is the term for detainees' written communications to or from private attorneys and other legal representatives, government attorneys, judges, courts, embassies and consulates, the president and vice president of the United States, members of Congress, the Department of Justice (including INS and Office

of the Inspector General), the U.S. Public Health Service, administrators of grievance systems, and representatives of the news media." Thus, the mail to Congress was guaranteed to be sent due to the fact that it is special correspondence related to a legal matter. As the ICE Standards establish the right that the Plaintiff has to mail his letters to Congress, Immigration and Customs Enforcement erred when he failed to allow the letters to be mailed.

### PRIVATE BILL BY CONGRESS OR THE SENATE

**16.**    Initially, the Attorney General had no discretion in ordering deportation, and an alien's sole remedy was to obtain a private bill from Congress. See Foti v. INS, 375 U.S. 217, 222 (1963). The first measure of statutory relief was included in the Alien Registration Act of 1940, 54 Stat. 670. Under the statutory predecessor of § 244, suspension of a deportation order could be granted only if the alien demonstrated "exceptional and extremely unusual hardship." Immigration and Nationality Act of 1952, § 244 (a)(1), Pub. L. 414, 66 Stat. 214. This provision was amended to require that the alien show that deportation would result in "extreme hardship," Act of Oct. 24, 1962, Pub. L. 87-885, § 4, 76 Stat. 1248.

**17.**    The federal immigration laws are exceedingly complex. See Lok v. INS, 548 F.2d 37, 38 (2d Cir. 1977) (federal

immigration laws bear "striking resemblance . . . to . . . King Minos' labyrinth in ancient Crete."). The INA enumerates thirty-three general categories of people who may not enter the United States. See 8 U.S.C. § 1182. Deportable persons can come from these or nineteen other categories. See 8 U.S.C. § 1251. Beyond this, the INA provides for many circumstances which prevent a "deportable alien" from actual deportation. See 8 U.S.C. § 1254 (petition to suspend deportation); 8 U.S.C. § 1158 (political asylum); 8 U.S.C. § 1255 (adjustment to lawful permanent resident status); INS O.I. § 242(a)(22) (deferred action status). Deportation cases may be reopened on petition to consider evidence previously unavailable, or an Immigration Judge or the Board of Immigration Appeals may reopen the case sua sponte. See 8 C.F.R. §§ 3.22, 242.22. A final administrative order of deportation can be stayed by the district director, 8 C.F.R. § 243.4, by a private bill in Congress, INS O.I. § 107.1, or if departure is "prejudicial to the interests of the United States," 8 C.F.R. § 215.3. All these determinations are appealable to the BIA, the Circuit Courts of Appeals and, potentially, to the Supreme Court. See 8 U.S.C. § 1105a(a) (review of deportation decisions may be had in federal appellate court); 8 C.F.R. § 3.1(b) (appellate jurisdiction of 314).

**18.**     Because of this skein of provisions, there is no assurance that a (person) subject to deportation will ever be

deported. An illegal entrant might be granted federal permission to continue to reside in this country, or even to become a citizen. In light of the discretionary federal power to grant relief from deportation, [a governmental authority] cannot realistically determine that any particular undocumented (person) will in fact be deported until after deportation proceedings have been completed. It would of course be most difficult for the [governmental authority] to justify a denial of [a benefit] to a [person] enjoying an inchoate federal permission to remain. Plyler v. Doe, 457 U.S. 202, 226, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982) (citations omitted).

**19.**    In the past, there was legislative participation in some of the adjustment procedures we have discussed, such as suspension of deportation and relief under the Displaced Persons and Refugee Relief Acts. But these were primarily devices for administrative dispensation, with a requirement for legislative scrutiny when administrative action was favorable. However, the constitutionality of such legislative participation is now doubtful to the extent that such legislative approval is required before an administrative decision can become final, See Chadha v. INS, 462 U.S. 919 (1983).

**20.**    For many years there were increasing requests for direct intervention by Congress in individual cases. When all

1   other roads have been explored, when administrative relief has

2   been denied and court action has proved fruitless, many

3   persons have sought to avert the impact of the immigration law

4   by special legislation. The introduction of a private

5   immigration relief bill does not in itself block removal. But

6   in many cases it will induce the administrative authorities

7   voluntarily to stay their hands until Congress can act, (For a

8   holding that court relief may be available if such a stay is

9   denied, see Knauff v. McGrath, 181 F.2d 839 (2d Cir. 1950).)

10  **21.**     Private immigration bills serve an array of functions.

11  They allow for notions of fairness and equity to mitigate the

12  frequently harsh operation of general immigration standards.

13  More importantly, the proliferation of private bills of

14  similar substance may expose a current law's deficiencies and

15  spur Congress to amend the law of general applicability.

16  Private bills have provided impetus for changes in the

17  national origins quota system and exclusion laws, and have

18  highlighted systemic gender inequities under naturalization

19  laws, Robert Hopper & Juan Osuna, Remedies of Last Resort:

20  Private Bills and Deferred Action, 97-06 Immigr. Briefings 2-3

21  (June 1997). Conversely, general immigration laws may promote

22  private bills. Restrictive immigration measures like the

23  Illegal Immigration Reform and Immigrant Responsibility Act of

24  1996 (IIRAIRA), Illegal Immigration Reform and Immigrant

25  Responsibility Act of 1996 (IIRAIRA) (enacted as Division C of

1    Omnibus Consolidated Appropriations Act, 1997, Pub. L. No.

2    104-208, 110 Stat. 3009) often prove overinclusive in

3    practice, thus generating a bevy of private bill requests from

4    individuals with sympathetic claims, Hopper & Osuna, supra

5    note 3, at 1.

6    **22.**   Statistics illustrate the ebb and flow in the

7    popularity of private immigration bills. In the 78th Congress

8    (1943-1944), 163 private immigration bills were introduced;

9    only twelve were enacted, Immigration and Naturalization

10   Service, Dep't of Justice, 1992 Statistical Yearbook of the

11   Immigration and Naturalization Service 178 (1993) (Table 79).

12   Thereafter the number of bills and enactments rose sharply. In

13   the 90th Congress (1967-1968), 7,293 private immigration bills

14   were introduced and 218 were enacted. In the 91st Congress

15   (1969-1970), 6,266 private immigration bills were introduced

16   and 113 were enacted, Office of Immigration Statistics, Dep't

17   of Homeland Security, 2002 Yearbook of Immigration Statistics

18   212 (2003) (Table 55)  availableatuscis.gov/graphics/shared/

19   aboutus/statistics/ybpage.htm (last visited July 13, 2004).

20   These bills accounted for almost half of all bills, both public

21   and private, introduced in Congress during those years, See

22   Sidney Rawitz, In the Hands of Congress: Suspension of

23   Deportation and Private Bills, 57 Interpreter Releases 76, 80

24   (Feb. 14, 1980).

25          **[2]--Legislative Procedure**

23.     A person wishing to have a private relief bill introduced must, of course, persuade a member of Congress that he or she has a meritorious claim for relief. If the Senator or Representative believes the matter merits legislative consideration, the member of Congress introduces the private bill for the relief of a named individual or individuals. The bill is referred to the Judiciary Committee of the house of Congress in which it is introduced. Most such bills are introduced in the House of Representatives. Note, Private Bills In Congress, 79 Harv. L. Rev. 1684, 1688 (1966).

### [a]--House Private Bills Procedures

24.     Since there are no statutory guides for such legislation, the standards for judgment are not fixed. However, the Subcommittee on Immigration and Claims of the House Judiciary Committee has published rules of procedure for private immigration legislation. Subcomm. on Immigration and Claims, House Judiciary Comm., 107th Cong., Rules of Procedure and Statement of Policy for Private Immigration Bills (2001) [hereinafter House Rules of Procedure], available at www.house.gov/judiciary/documents.htm (last visited July 12, 2004). All requests for a private immigration bill must begin with a letter to the chairman of the subcommittee detailing the relevant facts of the case and must include ``all pertinent documents.'' Id. at 1. These should include the basic biographical information of all proposed beneficiaries,

1     close relatives, and interested parties, information detailing

2     all entries and departures to and from the United States, the

3     status of all pending petitions and immigration proceedings,

4     occupational histories of proposed beneficiaries, and a signed

5     statement from each beneficiary stating that he or she

6     requests the relief sought by the private bill. Id. Most

7     importantly, the request must include an exposition detailing

8     how failure to provide for the desired relief will result in

9     ``extreme hardship'' to the beneficiary. Id.

10 **25.**    The showing above exposes the fact that the Plaintiff

11     has the absolute right to seek relief through Congress and

12     seeking such relief is a legal matter under the Fifth

13     Amendment, not only a right of petition under the First

14     Amendment.

15 **26.**    Plaintiff claims that he resubmitted the documents for

16     mailing on or about the date of June 20, 2007 and Immigration

17     and Customs Enforcement again refused to mail the documents

18     and this prevented the Plaintiff from gaining due process in

19     his immigration proceeding in that the Plaintiff had a right

20     to seek the relief from Congress under the law and that right

21     was deliberately taken away from him by Immigration and

22     Customs Enforcement

23     **PREJUDICE FROM THE NOT MAILING OF THE DOCUMENTS**

24 **27.**    Plaintiff is a citizen of the United States who is

25     held by ICE. He has a right to seek all available relief from

1   the continuing confinement and he has the right to seek relief

2   through the act of Congress. Plaintiff, because he has been

3   denied the opportunity to send the letters to Congress, is

4   caused to spend an overlong time in custody. First,

5   Immigration and Customs Enforcement, was wrong for not sending

6   the first batch of letters and pretending that he had. Next,

7   Immigration and Customs Enforcement, was wrong for preventing

8   the mailing of the second bunch of letters that were to be

9   sent to Congress and this has caused the Petitioner's claim

10  not to be heard.

11  **28.**   A private bill is provided for in 8 CFR, see <u>INS v</u>

12  <u>Jong Ha Wang, 450 U.S. 139, 140 and n.1 (1981)</u>. Immigration

13  and Customs Enforcement, responded that it was "unreasonable"

14  to approve those copies despite the fact that Plaintiff has an

15  absolute right to reach the senators and the Congressmen and

16  women under two amendments, the Due Process Clause of the

17  Fifth Amendment as well as the New Mexico State Laws and New

18  Mexico Constitution. provides the right to reach the senators

19  and the Congress and the First Amendment right to petition

20  provides the right to reach the Senators and the Congress.

21  Yet, Immigration and Customs Enforcement, proclaimed that it

22  was "unreasonable" to seek such copies and did not approve

23  them. When the copies were gained from other sources,

24  Immigration and Customs Enforcement, failed to mail the

25  letters on two different occasions that they were presented to

him for mailing. Because Immigration and Customs Enforcement, failed to mail the letters to Congress and wished to place restrictions on the mailing of letters to Congress, he violated my clearly established rights to petition and to seek due process through a private bill from Congress.

CLAIM TWO

ILLEGAL OPENING OF LEGAL MAIL/CONFIDENTIAL MAIL

**29.** Plaintiff claims that Immigration and Customs Enforcement, has either personally opened legal/confidential mail, or authorized the opening of confidential legal mail to the detriment of the Plaintiff's rights.

**30.** In particular, the Plaintiff claims that Immigration and Customs Enforcement, has authorized and approved the opening of correspondence, the copying of correspondence, the reading of correspondence where that correspondence was headed to the Seattle Times Newspaper and legal entities.

**31.** Plaintiff claims that he has a right to communicate with a reporter or the newspaper in a confidential letter. Moreover, he claims that he has the right to such privacy given by ICE National Standards which state, "Indigent detainees will be permitted to mail the following at government expense: 1. All correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative and any court." Further, the Standards state, "Special correspondence" is the term for

1   detainees' written communications to or from private attorneys
2   and other legal representatives, government attorneys, judges,
3   courts, embassies and consulates, the president and vice
4   president of the United States, members of Congress, the
5   Department of Justice (including INS and Office of the
6   Inspector General), the U.S. Public Health Service,
7   administrators of grievance systems, and representatives of
8   the news media."

9   **32.**   The ICE Standards state, specifically, "Staff shall
10  neither read nor copy special correspondence." The fact is
11  that the Plaintiff will establish the fact that his special
12  correspondence was opened by Immigration and Customs
13  Enforcement,, under Immigration and Customs Enforcement's
14  authorization, and Immigration and Customs Enforcement, knew
15  or should have known that it was illegal and unconstitutional
16  to breach the security of that instrument which was opened,
17  and copied and then used by Immigration and Customs
18  Enforcement, for his own purposes.

19  **33.**   In fact, ICE National Standards state, "Outgoing
20  special correspondence will not be opened, inspected or read."
21  Here, Immigration and Customs Enforcement, went further than
22  opening the mail, they authorized the copying of the mail and
23  reading of the mail and using of the mailed letter in a
24  disciplinary against the Plaintiff.

25

**34.**    Immigration and Customs Enforcement has also been involved in the opening of another piece of mail directed to the Australian Embassy. This mail was directed to the Australian Embassy and the mail was opened, the document removed and photocopied and used as an exhibit by ICE before the Immigration Court. Plaintiff claims that he was violated of his due process rights by the opening of his mail directed to the Australian Embassy.

**35.**    Moreover, the Defendant may claim that he gained the document when it was presented for copying by the Plaintiff, but, even if the document was presented for copying, the Defendant has no right under the law to read that material where it is clearly a legal document on its face without it being read. The application to the Australian Embassy was a form seeking asylum in Australia away from the United States because of the problems he has been put through by the ICE agency. ICE has absolutely no right to read legal material presented for copying. In Wolff v. McDonnell, 418 U.S. at 575-77, the Court upheld a prison regulation that allowed staff to inspect, but not to read, inmates' legal mail. Lower courts have held that legal mail may not be read nor copied without the permission of the inmate. Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981); Ramos v. Lamm, 639 F.2d 559, 582 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 68 L. Ed. 2d 239, 101 S. Ct. 1759 (1981); Guajardo v. Estelle, 580 F.2d

748, 758-59 (5th Cir. 1978). The Ninth Circuit has previously held that violation of confidentiality in legal documents presented for copying violates the meaningful access to the Courts, Casey v Lewis, 43 F. 3d 1261 (Overruled on other grounds, Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Although the matter was overruled by the Supreme Court, it was not overruled on the merits of the claims, but on the lack of standing to proceed with the claims. In any case, the Supreme Court has previously stated that the mail should be confidential and the copies should be confidential.

**36.**     Yet, the Plaintiff claims that Immigration and Customs Enforcement has gone further than this in its violations of the rights of the Plaintiff. In particular, the Plaintiff complains to the fact that he, of all 1,000 plus detainees at NWDC receives special treatment for his copy requests. First, the Plaintiff alleges and will prove that Immigration and Customs Enforcement, has allowed its staff to keep copies of the legal papers submitted by the Plaintiff for copying. He has allowed the reading of the papers, and he has allowed the faxing of the papers to counsels adverse to the Plaintiff and this will all be proven through discovery material held by ICE and Geo Group Inc.

**37.**     Plaintiff has been injured by the continuing actions of Immigration and Customs Enforcement, where the documents

the Plaintiff prepares are practically obsolete once he provides a document to be copied because the documents are faxed to counsels by Immigration and Customs Enforcement and the counsels act on the content of the documents and this leaves the Plaintiff at a marked disadvantage.

**38.** Plaintiff has been bothered by stressful conditions of confinement where he must present the materials to Immigration and Customs Enforcement to gain copies and must succumb to the illegal actions of Immigration and Customs Enforcement.

**39.** Plaintiff has not been the lone person whose mail is tampered with by Immigration and Customs Enforcement, and whose copies confidence are violated by Immigration and Customs Enforcement,. One detainee, in particular, Damion Bromfield's legal mail was opened by Geo acting under Immigration and Customs Enforcement,'s guidance.

**40.** Other detainees have routinely been denied their right to confidential mail when it is legal mail. Plaintiff specifically claims and alleges that the Grievance files of Geo and ICE will show the fact of the violations of law.

**41.** On the date of January 10th, 2008 ICE refused to mail letters to the embassies where the letters were seeking travel documents so the Plaintiff could leave the United States and leave his indefinite confinement. Those letters were presented for mailing and ICE refused to mail those letters even while they were asserting in court that the Petitioner had refused

1  to comply with mandates that he assist in the attempt to gain

2  documents from embassies. This denied due process to the

3  Petitioner.

4

5

6  **COPIES OF LEGAL DOCUMENTS**

7  **42.**    Plaintiff cannot complain enough of the lack of

8  confidentiality in his legal documents. First, the documents

9  that are printed off the Computer are read by the librarian

10  under direction by Immigration and Customs Enforcement.

11  **43.**    Second, the documents that are submitted for copying

12  are read by the Warden under guidance and direction by

13  Immigration and Customs Enforcement.

14  **44.**    Third, the documents are copied under the Direction of

15  Immigration and Customs Enforcement, for the personal purposes

16  of Geo and ICE.

17  **45.**    Fourth, the documents submitted for copies are used by

18  ICE and Geo for their own purposes including faxing documents

19  to their counsels, and using the documents in "Declarations"

20  to the District Court and the Immigration Court.

21  **46.**    Plaintiff claims that it violates his right to

22  meaningful access where the Defendants have copied his legal

23  documents for their own purposes, used those documents for

24  their own purposes, and faxed those documents to their

25  counsels for their own purposes.

**47.**   Plaintiff claims that when the documents printed in the library is read by the librarian it is a violation of the right to confidentiality.

### DENIAL OF RIGHT TO SEEK UNITED STATES PASSPORT

**48.**   Plaintiff claims that he has a right to seek a United States Passport and such right exists under the Fifth Amendment as well as the New Mexico State Laws and New Mexico Constitution. Due Process clause where there is an immigration matter at issue.

**49.**   In other words, the Plaintiff claims that the United States Passport is the best evidence of United States Citizenship.

**50.**   Under [ 8 C.F.R. § 204.1(g)(1)] the following is true that the seeking and gaining of a United States Passport is the ultimate defense against removal as it establishes citizenship:

(g)--Evidence of petitioner's United States citizenship or lawful permanent residence.--

(1)--Primary evidence.

A petition must be accompanied by one of the following:

(i)--

A birth certificate that was issued by a civil authority and that establishes the petitioner's birth in the United States;

1   (ii)--

2   An unexpired United States passport issued initially for a full ten-

3   year period to a petitioner over the age of eighteen years as a

4   citizen of the United States (and not merely as a noncitizen

5   national);

6   (iii)--

7   An unexpired United States passport issued initially for a full five-

8   year period to the petitioner under the age of eighteen years as a

9   citizen of the United States (and not merely as a noncitizen

10  national);"

11

12  **51.**    Plaintiff claims that he had accomplished the act of

13       gaining his birth certificate from the County Recorder of Los

14       Angeles, and needed to present such certificate to the United

15       States Passport Agency or the United States District Court but

16       was prevented from doing so by Immigration and Customs

17       Enforcement, and this denied the Plaintiff his due process

18       under the law.

19  **52.**    And the Plaintiff claims that Immigration and Customs

20       Enforcement, knew that the Plaintiff had a right to due

21       process on his claims and has a right to seek such a passport

22       but Immigration and Customs Enforcement, prevented the

23       Plaintiff from seeking and gaining such a passport and denied

24       the due process of the Plaintiff in the Immigration Hearing

25       where the Plaintiff was not able to produce the passport and,

1    as a direct result of Immigration and Customs Enforcement,'s

2    actions, was denied relief from an order of removal.

3    **53.**    Plaintiff specifically claims that he is a citizen of

4    the Untied States and his privilege includes the right to seek

5    a United States passport for any purpose including a challenge

6    in the immigration proceeding and that Immigration and Customs

7    Enforcement, violated that right and denied him due process by

8    doing so in violation of the Fifth Amendment.

9    **VIOLATION OF THE RIGHT TO CALLS & CONFIDENTIAL CALLS TO COUNSELS**

10   **54.**    Plaintiff   claims   that   since   his   arrival   at   the

11   Northwest Detention Center he has been denied the right, by

12   Immigration   and   Customs   Enforcement,,   to   make   calls   &

13   confidential calls to counsels and that has injured him by

14   violating his rights under the Fifth Amendment. He has been

15   denied the ability to call the persons listed in Exhibit A.

16   **55.**    In particular, the Plaintiff claims that Immigration

17   and   Customs   Enforcement   has   recorded   telephone   calls   to

18   counsels, sanctioned the listening in to calls to counsels,

19   and   that   he   has   violated   the   ICE   policy   regarding   the

20   confidentiality of calls to counsels.

21   **56.**    In particular, the Plaintiff claims that Immigration

22   and Customs Enforcement has sanctioned the use of confidential

23   information gained from listening into privileged calls and

24   has   sanctioned   the   use   of   that   information   to   injure   the

25   Plaintiff.

**57.**    In particular, the Plaintiff claims that on one occasion he was speaking to a Newspaper Outlet, the Seattle, Times when the call was listened in to by persons who had been allowed to do so by Immigration and Customs Enforcement.

**58.**    Plaintiff claimed that the contents of the conversation were then used to perform an investigation against the Plaintiff and the Plaintiff was punished by persons who were supported by Immigration and Customs Enforcement.

**59.**    Plaintiff claims that the listening person learned information that was privileged and this led directly to the opening of a piece of mail that was directed to the newspaper, and that the mail was taken and not returned to the Plaintiff and Plaintiff was punished.

**60.**    Plaintiff claims that Immigration and Customs Enforcement has prevented the Plaintiff from calling counsels confidentially where such confidential calls to counsels were needed in order to gain representation of the Plaintiff in his immigration matter.

**61.**    Plaintiff specifically claims that ICE has a policy where the calls to counsels are to be confidential and Immigration and Customs Enforcement violated that policy by failing to allow the Plaintiff to call the persons listed on Exhibit A confidentially.

**62.**   Plaintiff claims that every number listed on Exhibit A are legal calls where confidentiality is necessary to reach the courts and Immigration and Customs Enforcement denied such confidentiality where the Plaintiff needed such confidentiality in order to discuss his case needs.

**63.**   In particular, Plaintiff specifically claims that Immigration and Customs Enforcement did specifically admit in litigation that calls made on the telephone have been recorded and monitored.

**64.**   Plaintiff specifically claims that prior to admitting that the calls on the telephone had been monitored and recorded, Immigration and Customs Enforcement and his staff specifically stated to the Plaintiff that the telephones were not monitored and the calls were not recorded.

**65.**   Plaintiff claims for the period of from August of 2005 through June of 2007 the phone calls at the Northwest Detention Center have been recorded and monitored by Immigration and Customs Enforcement while he maintained publicly and in writing that the calls were not being monitored.

**66.**   Plaintiff claims that Immigration and Customs Enforcement specifically violated ICE policy by recording and monitoring the telephone calls where he should have known, and did know those calls were to legal counsel.

**67.**    In particular, the Plaintiff claims that Immigration and Customs Enforcement knew and was fully aware that ICE Policy in the ICE National Standards state that a court order shall be required to monitor and record telephone calls to counsels and other privileged persons and Immigration and Customs Enforcement deliberately violated that Standard.

**68.**    Plaintiff claims injury in the form of the fact that he has been unable to gain counsel to represent his immigration matter because he has been unable to speak confidentially to persons who would be counsels and was unable to speak to counsels who are often in places where they cannot make visits to the Center for personal visitations and consultations.

**69.**    Plaintiff specifically claims that the Plaintiff has no alternative to the telephone confidentiality as the Defendant also opens legal mail directed to entities that he knows to be legal or privileged and reads, copies and uses the contents for his own purposes in violation of clearly established law.

**DENIAL OF RIGHT TO ACCESS COUNSEL THROUGH TOLL FREE NUMBERS**

**70.**    The Plaintiff claims that Immigration and Customs Enforcement has denied him the right to access counsel who advertise using toll free numbers.

**71.**    Plaintiff claims that most counsels who advertise using the television or printed medium utilize toll free

numbers, but the Plaintiff has been prevented from accessing those counsels where the calls are toll free and this had denied him access to counsel and to the courts.

**72.** Moreover, the Plaintiff claims that Immigration and Customs Enforcement has violated his right to gain information from governmental agencies where that information can be used in his immigration matter by failing to have toll free calling on the telephone lines at Northwest Detention Center.

**73.** Plaintiff claims that he has been denied access to such Agencies such as United States Citizen and Immigration Services, United State Bureau of Immigration and Custom Enforcements, United States Armed Forces, United States Social Security Administration, United States Department of Health Education and Welfare, where all such Agencies has information that would assist him in his matter by providing information.

### DENIAL OF DUE PROCESS BY DENIAL OF DOCUMENTS AND VIOLATING SUBPOENAS

**74.** Plaintiff claims that Immigration and Customs Enforcement has violated his due process rights by denying him access to documents held by his office where those documents were important to the Plaintiff's case (s).

**75.** In particular, the Plaintiff claims that in litigations he has the right to discover items held by Immigration and Customs Enforcement thorough the use of subpoenas.

**76.**     Plaintiff  claims  that  Immigration  and  Customs Enforcement has prevented the Plaintiff from gaining access to such documents as follows: GEO Custody File held by Geo for ICE; ICE Grievances filed by the Plaintiff, Kites filed by the Plaintiff with ICE, Copies of the file of Marva Rudder, Copies of the File of Joanne Rudder, and other items such as E-Mails sought in discovery in the Immigration matter and the other legal matters.

**77.**     Plaintiff  claims  that  Immigration  and  Customs Enforcement has set out to deny him due process in his legal matters  by  withholding  the  items  above  to  prevent  the Plaintiff from succeeding in his legal matters and this marks a violation of the rights of the Plaintiff through obstruction of Justice by Immigration and Customs Enforcement.

**78.**     Plaintiff claims that he has been denied due process by Immigration and Customs Enforcement where Immigration and Customs Enforcement has deliberately withheld evidence that he knew was to be used in the Courts against the Service or against Immigration and Customs Enforcement personally.

**79.**     Plaintiff specifically claims that he needed the files of Marva Rudder and Joanne Rudder because those files would lead  to  evidence  showing  that  the  Plaintiff  is  not  Wayne Rudder, but Immigration and Customs Enforcement has failed to provide  those  files  even  though  he  was  personally  in possession of those files at one point in time where he showed

1    the Plaintiff the files and taunted the Plaintiff with the

2    files.

3    **80.**    Plaintiff claims that the files of Joanne Rudder and

4    Marva Rudder would have provided testimony from the Rudders

5    that the Plaintiff is not their sibling and that would have

6    been sufficient to release the Plaintiff who has maintained

7    that he merely used the Rudder identity for financial gain

8    once upon a time and that he is not Rudder but a person who

9    was born Vincent Daniel Hopper.

10   **81.**    Plaintiff    claims    that    Immigration    and    Customs

11   Enforcement has violated his due process by denying access to

12   the files.

13

14

15                    **DISCRIMINATION AND RETALIATION**

16   **82.**    Plaintiff    claims    that    Immigration    and    Customs

17   Enforcement    has    retaliated    against    him    and    discriminated

18   against him by denying him the access to the legal library on

19   a par as other persons in the facility and this denial of

20   library access has been specifically to discriminate against

21   the Plaintiff on the basis of sex, color, sexual orientation,

22   intelligence, and capability.

23   **83.**    In particular, the Plaintiff claims that he has legal

24   deadlines that are always imminent.

25

**84.**     In particular, the Plaintiff claims that he has been in the library with other persons who do not have legal deadlines.

**85.**     Plaintiff claims that the Policy states that the persons with legal deadlines will be given priority to access legal resources over those without deadlines.

**86.**     Yet, the Plaintiff claims that over the past two years he has been discriminated against by Immigration and Customs Enforcement who has granted persons without legal deadlines more time in the library against the Plaintiff who has shown Immigration and Customs Enforcement verifiable legal deadlines and this has injured the Plaintiff by causing him to not have sufficient time to respond to pleadings or to file actions in the Courts.

**87.**     Plaintiff claims that Immigration and Customs Enforcement set out to discriminate against the Plaintiff on the basis of sex, color, sexual orientation, intelligence, and capability.

**88.**     Plaintiff claims that Immigration and Customs Enforcement set out to discriminate against the Plaintiff on the basis of sex, color, sexual orientation, intelligence and capability specifically to inhibit the Plaintiff's ability to reach the Courts.

**89.**     In particular, Plaintiff claims that while other persons without legal deadline routinely receive fifteen or

more hours in the library for their own work, Plaintiff has received only ten hours in the library when he has numerous deadlines and the Plaintiff claims that Immigration and Customs Enforcement actions were purely to prevent the access to the Courts.

### DENIAL OF ACCESS TO THE STATE COURTS

**90.**   Plaintiff claims that Immigration and Customs Enforcement has denied him access to the State Courts by failing to have the forms that are necessary to gain access to the State Courts.

**91.**   Plaintiff claims that he has attempted to file actions in the State Courts only to have the Court demand summons, a form that is used by the State Courts, but the Plaintiff, despite numerous requests to Immigration and Customs Enforcement, was denied access to the Summons and has lost an opportunity to seek relief in the State Courts which violates his right to seek redress under the First Amendment.

**92.**   Plaintiff claims that he wished to file suit against Mc Hatton, an employee under Immigration and Customs Enforcement and he was prevented from doing so.

**93.**   Plaintiff claims that he wished to file suit against Geo Employees and ICE Employees but was denied any opportunity to do so due to the lack of forms and lack of information in the Legal Library ran by Immigration and Customs Enforcement.

**94.**     Plaintiff claims that he has a right under the First Amendment and the Fifth Amendment as well as the New Mexico State Laws and New Mexico Constitution to reach the State Courts of New Mexico as the place Geo Care has a place of business which is in New Mexico, but Immigration and Customs Enforcement denied that right.

**95.**     Plaintiff specifically claims that he gained the right to file the suit by the Washington District Courts, but the Courts specifically sought that summons be presented to the Court for the Court to process the suit, but Immigration and Customs Enforcement, after numerous requests denied the Plaintiff access to the Courts by failing to have forms for the State Courts.

**96.**     In particular, the Plaintiff claims that Immigration and Customs Enforcement has access to the Summons and access to all State Court forms but deliberately prevent the Plaintiff from having such access to prevent the Plaintiff from accessing the Courts.

**97.**     Plaintiff claims that Immigration and Customs Enforcement specifically sought to prevent the Plaintiff from accessing the Courts of the State in order to confine the Plaintiff to only claims in the Federal Court because ICE has more influence over the federal judges than over the state judges.

**98.**    In particular, the Plaintiff claims that had he been able to bring the suits he has filed in federal court in the state court system, he would have prevailed in every one of the suits where magistrates are not beholden to the system.

**99.**    Plaintiff claims that he wished to being suits in the State courts challenging his conditions of confinement and his confinement as the State Court Judges could also order his relief from conditions or release from confinement, but Immigration and Customs Enforcement has prevented the Plaintiff from gaining access to the State Courts of Washington.

**100.**    In particular, the Plaintiff claims that Immigration and Customs Enforcement has also prevented access to the State Courts by failing to have any information in the library that would allow the Plaintiff to know his rights under the State Law.

**101.**    In particular, the Plaintiff claims that the ICE National Standards state that ICE shall obey and follow the Washington Administrative Manual and the Plaintiff has been unable to access that Manual to know what the manual states his rights are.

**102.**    Plaintiff claims that he has been unable to know what his rights are under the State of Washington and New Mexico Constitutions as the library does not have a copy of that document.

**103.**   Plaintiff claims that he has been unable to know what his rights are under the formative state laws of the State of New Mexico and the process of vindicating those rights because the library does not have the state laws in the library.

**104.**   Plaintiff specifically claims that Immigration and Customs Enforcement has been requested, by the Plaintiff, on numerous occasions to gain the law regarding the State of New Mexico but has failed to do so.

**105.**   Plaintiff claims that only in June of 2007, after two years of requests, Immigration and Customs Enforcement gained the criminal law for the State of New Mexico[1] where that law is/was needed to allow persons to challenge their criminal conviction as part of their immigration matters.

**106.**   Plaintiff claims that Immigration and Customs Enforcement prevented him from gaining a copy of the American Correctional Association Standards where Immigration and Customs Enforcement has copies of that document and where that document provides specific rights to detainees, and, by so doing, the Defendant has prevented the Plaintiff from knowing his rights under the law.

**107.**   Plaintiff claims that the American Correctional Standards has information therein that deal with the conditions of confinement and the National Standards that ICE

---

[1] Codes of New Mexico

and Immigration and Customs Enforcement **must** follow through contract with the ACA, but Immigration and Customs Enforcement has hidden those facts by failing to have a copy of the ACA standards in the library accessible to detainees. He has also failed to honor requests issued in litigation to provide the copy of those standards and that has denied the Plaintiff due process in his claims against Immigration and Customs Enforcement.

**108.** Plaintiff claims that Immigration and Customs Enforcement set out to deny the Plaintiff due process in his claims against Immigration and Customs Enforcement and ICE by deliberately failing to have any access to civil cases in the library.

**109.** In particular, the Plaintiff claims that Immigration and Customs Enforcement has gutted the discs in the library where the civil cases should be, and, as a direct result, the Plaintiff has no access to any of the civil cases in the library where those cases are the leading cases in the law. Cases that are needed in order to file suit are not evident. Laws that are needed to file suit are not evident. In particular, the Plaintiff claims that he had sought to file a criminal successive petition in the Court of Appeals but none of the cases dealing with successive appeals could be accessed because they had been gutted from the discs.

**110.**   Plaintiff specifically claims that the Plaintiff sought to learn information that would assist him in filing actions in the Court and properly defending actions in the District Court but he was unable to do so because the cases were not available.

**111.**   Plaintiff claims that when the Defendant provides pleadings to the Plaintiff they are never without numerous citations to law that the Plaintiff cannot reach.

### PATTERN OF DENIAL OF DUE PROCESS

**112.**   Plaintiff claims that Immigration and Customs Enforcement has entered into a pattern of denial of due process by allowing subordinates to engage in ruthless violations of the due process of the Plaintiff by punishing the Plaintiff for reasons that have no basis in fact and no foundation in law.

**113.**   In particular, the Plaintiff claims that he is a Fourth Amendment Detainee and cannot be punished absent due process, but Immigration and Customs Enforcement has engaged in a pattern of allowing the Plaintiff to be punished by his subordinates where the Plaintiff does not warrant such punishment and where the denial of due process is intrinsic to the violation of the rights.

**114.**   In particular, the Plaintiff claims that during the "hearings" given by Immigration and Customs Enforcement he is

never allowed to call and question witnesses. And that violates his due process under the Fifth Amendment.

**115.** In particular, the Plaintiff claims that he is never given all documents that are relied upon by Immigration and Customs Enforcement and his underlings and this violates the due process of the Plaintiff under the Fifth Amendment.

**116.** In particular, the Plaintiff claims that he is never granted due process in the hearings held by Immigration and Customs Enforcement and the proceedings are kangaroo courts that are designed to punish the Plaintiff without due process.

**117.** In particular, the Plaintiff claims that he has been sent to segregation where the ICE National Standards specifically state that Segregation is a place for persons who have violated certain institutional rules, **none of which the Plaintiff has violated.**

**118.** Plaintiff claims that Immigration and Customs Enforcement has presided over a facility where false reports are written and then upheld by his underlings and those false reports are written specifically to injure the Plaintiff.

**119.** Plaintiff claims that Immigration and Customs Enforcement has presided over a facility where the underlings have taken the Plaintiff's personal property in the form of the Plaintiff's Bible and his commissary items worth 40.20 where such taking was punitive and a denial of due process. Moreover, Immigration and Customs Enforcement failed to answer

the Tort Claims presented to his office on this issue and he has refused to process that Tort Claim despite the fact that he has held it for an overlong period.

**120.**    Moreover, the Plaintiff claims that Immigration and Customs Enforcement has conspired to deny due process by failing to provide the Plaintiff with a copy of the grievance with the Tort Claim attached thereto which was presented to Immigration and Customs Enforcement.

**121.**    It is the same with every grievance with a Tort Claim attached where the Plaintiff sought to exhaust his administrative remedy. Immigration and Customs Enforcement has held the grievances and have not returned the Tort claims made in those grievances and this violates due process.

**122.**    Then, after failing to provide answers to the grievances, where each grievance also made demand for a sum certain under the FTCA, Immigration and Customs Enforcement secreted the documents and prevented the Plaintiff from gaining copies of the documents and failed to adjudicate the factor of the FTCA Claims that were individually made to ICE and the United States.

### WRONGFUL IMPRISONMENT

**123.**    Plaintiff claims that United States, Immigration and Customs Enforcement have wrongfully imprisoned the Plaintiff from the period of time from March 6, 2006 through the present

1   and their actions violate the due process clause of the United

2   States Constitution.

**124.**   In particular, the Plaintiff claims that he provided a

certified copy of his birth certificate to Immigration and

Customs Enforcement, Garman  on the date of March 6, 2006.

This Birth Certificate established the fact that the

Plaintiff's name is Vincent Daniel Hopper and that he was born

in Lynwood City, Los Angeles County on the date of 8-27-60.

Upon receipt of the document, Immigration and Customs

Enforcement  began actions that would hide the fact of the

Plaintiff's identity and his nationality.

**125.**   In particular, Immigration and Customs Enforcement hid

the birth certificates. They seized the birth certificates and

hid them from the Plaintiff so the Plaintiff could not use the

certificates in his pleadings to the District Court and to the

United States Passport Agency.

**126.**   Then, Immigration and Customs Enforcement  set out to

wrongfully imprison the Plaintiff by refusing to properly

investigate the facts of the Plaintiff's identity and instead

sought to manufacture evidence to disprove that identity.

**127.**   Immigration and Customs Enforcement did not speak to

the Plaintiff's parents even though Immigration and Customs

Enforcement has the tools[2] with which to make such contact

---

[2] Choice Point etc.

with the Plaintiff's parents while the Plaintiff does not have such tools.

128. Plaintiff has three brothers, Stephen, and James where all three are Hoppers and all three have been involved with the law and their DNA is on file with the Department of Justice. Immigration and Customs Enforcement failed to gain information from the DNA banks of the DOJ when such would have established conclusively that the Plaintiff is a Hopper and not a Rudder.

129. Immigration and Customs Enforcement did not investigate the circumstances of the Plaintiff's accidents in the past where such accidents led to brain injury to the Plaintiff when the Plaintiff informed Immigration and Customs Enforcement of that fact.

130. Instead of trying to establish the Plaintiff's identity, Immigration and Customs Enforcement engaged in a corruption of the facts. They found one person who has used variations of the Plaintiff's name in the past, has never used the entire and complete name of the Plaintiff and settled on that person being Vincent Daniel Hopper solely based upon the fact that the person is "light complected" and Plaintiff's father is White.

131. Immigration and Customs Enforcement discounted the fact that the person answered to the name Darryl Yates.

**132.** Immigration and Customs Enforcement did not search police records for the identification of Darryl Yates in order to link the person and Darryl Yates as being one person. Instead, Immigration and Customs Enforcement used the fact that they had found this one person who used variations of the Plaintiff's name to justify their belief that Darryl Yates is the real Vincent Daniel Hopper while the Plaintiff is Wayne Rudder.

**133.** Immigration and Customs Enforcement had at their access the files of Joanne Rudder and Marva Rudder where those A Files are numbered 34-316-599 and 34-316 601. Instead of using those files to locate Marva Rudder and Joanne Rudder so they could gain information from those files to use either against the Plaintiff or on the Plaintiff's behalf, Immigration and Customs Enforcement took those files and secreted those files. They failed to provide the files when they were sought to provide the files to the Plaintiff. The provision of the files would have provided evidence to the Plaintiff to present that evidence to the Court that the Plaintiff is a citizen of the United States, or, at the very least, is not a non-citizen named Rudder. Immigration and Customs Enforcement denied due process.

**134.** In short, Plaintiff claims that Immigration and Customs Enforcement failed to adequately investigate the circumstances and jumped to the conclusion that the Plaintiff

1   was Rudder despite the Plaintiff's loud protestations that he

2   is not Rudder.

3   **135.** Plaintiff provided evidence to Immigration and Customs

4   Enforcement that Plaintiff's DNA is on file with the

5   Department of Justice in the identity of Vincent Daniel

6   Hopper. Plaintiff provided evidence that the Plaintiff's

7   fingerprints are listed in the Department of Justice as

8   Vincent Daniel Hopper. Yet, Immigration and Customs

9   Enforcement continued the incarceration of the Plaintiff

10   despite the fact that the Plaintiff is a citizen of the United

11   States and should not ever be impacted by Immigration and

12   Customs Enforcement .

13   **136.** Plaintiff claims that Immigration and Customs

14   Enforcement continued the incarceration of the Plaintiff

15   because they were vindictive and because they were retaliating

16   for the many suits filed against ICE and INS by the Plaintiff

17   where those suits have had substantive differences in the

18   operation of the agency.

19   **137.** Plaintiff claims that Immigration and Customs

20   Enforcement continued the incarceration of the Plaintiff to

21   punish the Plaintiff.

22   **138.** Plaintiff claims that the fact that Immigration and

23   Customs Enforcement and Garman ha attempted to shift custody

24   of the Plaintiff on March 14, 2006 is indication that they are

25

aware that the Plaintiff is not an alien but is a citizen of the United States.

**139.** Plaintiff claims that Immigration and Customs Enforcement and Garman acted deliberately to keep the Plaintiff behind bars by denying the Plaintiff access to information where that information would provide a showing that the Plaintiff is a citizen of the United States.

**140.** Plaintiff claims that Immigration and Customs Enforcement and Garman were deliberate in attempting to cement that the Plaintiff was not Hopper instead of learning whether or not the Plaintiff is Rudder.

**141.** Plaintiff claims that when he applied to the USCIS for an N 600-Declaration of Citizenship, Immigration and Customs Enforcement and Garman placed the Plaintiff into the USCIS computers as being a person named Wayne Ricky Elson Rudder where they had specific information that the Plaintiff was not Rudder.

**142.** In particular, the Plaintiff claims that he had a due process right that Garman and Immigration and Customs Enforcement and their staff would use their entire resources to determine the facts of citizenship, not just to attempt to disprove citizenship where there is no such proof that would disprove citizenship: 1. There are no fingerprints for Rudder when Rudder entered the United States. 2. There are no fingerprints for Rudder shortly when he arrived in the United

States. 3. There are no prints for Rudder when he was born. 4. There is no DNA on file anywhere for Rudder. 5. A fingerprint can only prove the identity of a person if the fingerprint is taken at birth or close to birth.

**143.**   In other words, the Plaintiff claims that fingerprints identify only the person who gave the fingerprints and not the identity that person was born with. Yet, Garman and Immigration and Customs Enforcement used the fact that the Plaintiff had been printed as Rudder, had testified as Rudder, to find that the Plaintiff was Rudder despite the fact that the Plaintiff provided evidence to Garman and Immigration and Customs Enforcement that specifically showed that he was not Rudder.

**144.**   Plaintiff claims that he has been wrongly imprisoned for the past 16 months until July 5, 2007 and his earnings potential is 6,667.40 monthly given his last earnings record. This means that the defendants have denied the Plaintiff earnings in the amount of 106,678.36 over the past sixteen months, but the Plaintiff goes further. In particular, the Plaintiff claims that the entire period is compensable and actionable in that the Untied States Embassy in Trinidad established that the Plaintiff was not a Trinidadian in 1993 and returned the Plaintiff to the United States in 1994 after 29 days in Trinidad. Thus, the Defendants should have known that the Plaintiff is not a person who was born in Trinidad,

1        but an American and that all and any detention is punitive

2        making the entire span of time to be actionable for specific

3        damages in the amount of loss production for the entire months

4        of custody by the Defendants when they know the Plaintiff is a

5        citizen of the United States.

6

**145.**      Plaintiff is not close to his mother, father or siblings, but the Plaintiff claims that the continued incarceration by the Defendants, when they know that the Plaintiff is a citizen, is such that it has robbed him of valuable time to make up with his mother and father and his siblings.

**146.**      The mother and father of the Plaintiff are both closing in on life's final chapter and their time on this earth is limited. The Plaintiff has been robbed of the time he needs in order to seek rapprochement with his family, this is especially egregious when the Plaintiff has informed the Defendants of his family, his mother and his father and the fact that he needs to be able to see his family.

**147.**      Plaintiff claims that he has been alienated from his family by the actions of the Defendants.

**148.**      Plaintiff claims that the actions of Immigration and Customs Enforcement have resulted in alienation of affection. Because of the confinement of this citizen, Plaintiff may never be able to have his chance to consort with his mother and father before they expire. This is unpardonable.

## DENIAL OF COUNSEL AND MAILING LETTERS TO ENTITIES

**149.** Plaintiff specifically claims that the Defendants have denied him the right to counsel by their actions with the telephone and with their actions in opening confidential communications, failing to mail confidential communications and by their failure to allow the Plaintiff to speak confidentially with counsels.

**150.** Plaintiff claims that under the First Amendment and the Fifth Amendment as well as the New Mexico State Laws and New Mexico Constitution he has a right to access counsel and to gain such counsel. That under the ICE National standards he has a right to speak confidentially with those counsels and putative counsels and the failure of the Defendants to grant him the opportunity to gain counsel is a violation of his constitutional rights.

**151.** In particular, the Plaintiff claims that on several occasions the Plaintiff complained about the video that is being played by ICE called, Know Your Rights Video. Plaintiff claims that Immigration and Customs Enforcement and Garman are aware that the video contains false information as it was first published in the year 1997 and they know that the information on the video is no longer credible. When the Plaintiff complained, Immigration and Customs Enforcement and Garman failed to correct the problem. When the Plaintiff submitted letters directed to the Florence Project in Arizona, the makers of the video, those

1    letters were not mailed by Immigration and Customs Enforcement

2    and Garman. Instead, they held and continue to hold those

3    letters. This marks not only a denial of due process but denial

4    of access to counsel as the Florence Project is made up of

5    lawyers who assist persons in the detention of ICE.

6    **152.**    Plaintiff specifically claims that he was writing to

7    complain of the content of the video and to seek legal assistance

8    from the Florence Project but his mail was returned several times

9    by Immigration and Customs Enforcement and the letters were not

10   mailed because Immigration and Customs Enforcement realized and

11   feared that the letters were speaking to the incorrectness of the

12   informational video being played daily, two times a day with its

13   false information.

14   **153.**    Plaintiff claims that he had a right to complain to the

15   Florence Project and he had a right to reach the Florence Project

16   for assistance in his case where he is a citizen of the United

17   States and Immigration and Customs Enforcement has violated that

18   right.

19   **154.**    Plaintiff further claims that when he realized that the

20   problems are the Northwest Detention Center were not going to be

21   solved by Immigration and Customs Enforcement, Plaintiff prepared

22   seventeen letters directed to the members of the higher hierarchy

23   of the Department of Justice.

24   **155.**    Plaintiff claims that he placed those letters into the

25   receptacles with sufficient postage upon those letters.

**156.**     Plaintiff claims that Immigration and Customs Enforcement failed to mail those letters and it is presumed that Immigration and Customs Enforcement opened those letters.

**157.**     In one of those letters was a tort claim against the United States because of Immigration and Customs Enforcement's behavior.

**158.**     Plaintiff claims that Immigration and Customs Enforcement denied him due process by failing to mail the letters to the persons that they were designated to go and this violated the due process of the Plaintiff under the Fifth Amendment.

**159.**     Plaintiff claims that he has a legal right to contact the Attorney General, any members of his staff, and all members of the ICE hierarchy because those are the custodians of the Plaintiff and Immigration and Customs Enforcement violated that right by failing to mail the letters.

**160.**     Plaintiff claims that Plaintiff made administrative grievances about the fact that Immigration and Customs Enforcement was allowing the air waves of FCC authorized commercial stations to be blocked by in-house devices that were attached to the televisions.

**161.**     Plaintiff claimed that he complained that the devices were set where they would block the programming of Black Public Radio and the Black Station, 92.5 F.M.

**162.**     Plaintiff claimed that when he informed Immigration and Customs Enforcement that he was going to the Federal

1  Communications Commission to complain and to the Washington
2  Utilities and Transportation Commission Immigration and Customs
3  Enforcement waited until the mail was submitted for mailing and
4  the mail was never mailed even though the records were created as
5  if the mail was sent. The officials at the Agencies never
6  received the mail.

7  **163.**   In particular, the Plaintiff alleges that a governmental
8  agency will respond to any mail sent to that agency, either in
9  the form of a form letter or in a general statement or a specific
10  response, but the fact that Immigration and Customs Enforcement
11  failed to mail the letters means that the agency never got any
12  opportunity to respond and did not respond, and none of the
13  letters were ever returned.

14  **164.**   Immigration and Customs Enforcement failed to mail the
15  letters designated as legal mail to the FCC and the UTC because
16  he desired to ensure that the Plaintiff did not receive due
17  process on his complaint. Moreover, the Plaintiff alleges that
18  the Plaintiff has a right to make a complaint to the FCC and the
19  UTC and that falls under the First and Fifth Amendment of the
20  United States Constitution as well as the New Mexico State laws.
21  Plaintiff claims that he has a right to seek redress and that
22  right is ensured by the United States and The State of New
23  Mexico.

24  **165.**   Plaintiff claims that Immigration and Customs Enforcement
25  prevented him from making his complaints simply to create a

1    material benefit so that he could continue blocking access to the

2    Black Stations on the radio dial by using devices which are

3    believed illegal under the FCC and UTC rules and regulations.

4    **166.**      Further, the Plaintiff claims that the Defendant was

5    presented with 220 letters for mailing to a law firm's associates

6    and partners where that firm was Latham and Watkins. Petitioner

7    claims that the letters were not mailed by the Defendant, but the

8    letters were destroyed by the Defendant and not mailed.

9    **167.**      Similarly, letters were mailed to O'Melveny and Myers,

10   another law firm seeking assistance with the Petitioner's case.

11   The letters were not mailed by the Defendant, a violation of due

12   process and denial of the right to counsel.

13                       **DENIAL OF A NOTARY**

14   **168.**      Plaintiff claims that Immigration and Customs Enforcement

15   has denied him the access to a notary and the denial to a notary

16   has been a denial of access to the courts.

17   **169.**      In particular, the Plaintiff claims that the Defendant

18   knows the Plaintiff has utilized numerous names including Duane

19   Rudder, Antolin Andrews, Antolin Andrew Marks and Vincent Daniel

20   Hopper.

21   **170.**      The Plaintiff claims that Immigration and Customs

22   Enforcement knew that the Plaintiff legally changed his name to

23   Antolin Andrew Marks on March 16, 2006, a final name change.

24   **171.**      Defendant received a certified copy of the document and

25   gave a copy to Immigration and Customs Enforcement.

**172.**      Plaintiff claims that the Defendant, Immigration and Customs Enforcement, received a request from the Plaintiff for notarization of a document where such document sought that the document be notarized to allow the Plaintiff to enter the Superior Courts of North Carolina to seek redress against the Compass Group.

**173.**      Plaintiff specifically claims that the Court required the notarized document to initiate suit.

**174.**      In particular, Plaintiff claims that Immigration and Customs Enforcement failed to grant the notary on the issue when he was granting notary services to every other detainee in the facility and he did not provide the Plaintiff notary services simply because he wished to prevent the filing of the suit.

**175.**      In particular, the Plaintiff claims that the Defendant, Immigration and Customs Enforcement, has been active in preventing due process by failing to return the grievances which has the document attached to it where the document sought notarization of the document for filing in the North Carolina Courts.

**176.**      Further, the Plaintiff claims that the Defendant, Immigration and Customs Enforcement, has been denying the Plaintiff access to the Superior Court of Los Angeles because he ahs denied the access to a notary to notarize the document the Plaintiff sought to file in that court where such document was a Living Will and Last Testament.

**177.**    Plaintiff claims that he presented the document for notarization and Immigration and Customs Enforcement refused to have the document notarized when he was notarizing documents for all other detainees.

**178.**    The injury is the fact that the Plaintiff cannot file the things he wishes to file in the Courts and Immigration and Customs Enforcement has prevented those filings above.

**179.**    In particular, the Plaintiff claims that he has been discriminated against by Immigration and Customs Enforcement who allows other persons to gain notary services but has prevented the Plaintiff by punishing the Plaintiff by preventing such access to the Plaintiff where the Plaintiff sought notary services.

**180.**    Io particular, the Plaintiff claims that he has been prevented from accessing the Courts because Immigration and Customs Enforcement has acted to prevent the access, the specific access the Plaintiff wished to have and this is because Immigration and Customs Enforcement acted to injure the Plaintiff rights.

### FAILURE TO SUPERVISE AND TRAIN

**181.**    Plaintiff claims that the failure to supervise and failure to train also resulted in the taking of 40.20 cents of his commissary items by untrained employees who were untrained and unsupervised by Immigration and Customs Enforcement.

**182.**     In particular, the Plaintiff claims that Immigration and Customs Enforcement has a duty to enforce the contract and to ensure the protection of the Plaintiff's property from the employees of Geo, but Immigration and Customs Enforcement has failed to supervise and has failed to train those employees who violate ICE Standards and violate the law in their actions in injuring the Plaintiff by the taking of the Plaintiff's property.

**183.**     Plaintiff claims that the failure to train and supervise is manifested in the manner in which the individual employees routinely skirt their own written rules and policies.

**184.**     Plaintiff claims that the failure to train and supervise is manifested in the manner in which the individual employees routinely break the laws of the United States.

**185.**     In particular, the Plaintiff claims that he was punished by Charles Mc Burney, under the direction of Immigration and Customs Enforcement for using the computers in the library to prepare a letter to Neil Clark, a protected activity under the Constitution as Neil Clark is a defendant in several suits filed by the Plaintiff. Furthermore, Neil Clark is the direct custodian of the Plaintiff, but when complained against, Immigration and Customs Enforcement indicated that Neil Clark is not a privileged person for communication and the Plaintiff's letter to Neil Clark was not protected by the law. As a result, the Plaintiff was forced to spend seven days in Segregation as punishment for this

1   protected  activity  due  to  the  lack  of  training  and  lack  of

2   supervision by Immigration and Customs Enforcement.

3   **186.**        Plaintiff  claims  that  the  lack  of  training  and  lack  of

4   supervision  by  the  Defendant  caused  the  Plaintiff  injury  in  his

5   religious  beliefs  in  that  the  Plaintiff's  religious  beliefs

6   command  that  he  take  his  meals  separately,  but  Immigration  and

7   Customs  Enforcement  allowed  the  employees  he  is  to  supervise  deny

8   the  Plaintiff  the  right  to  eat  separately  and  thus  violated  the

9   Plaintiff's religious freedom.

10  **187.**        Plaintiff  claims  that  the  lack  of  supervision  has  allowed

11  the  employees  to  conspire  against  the  Plaintiff  with  impunity  and

12  such  conspiracy  was  known  by  Immigration  and  Customs  Enforcement

13  and  he  failed  to  curb  the  conspiracy  or  prevent  the  conspiracy

14  against the Plaintiff's rights.

15  **188.**        In  particular,  the  Plaintiff  claims  that  Immigration  and

16  Customs  Enforcement  knew  or  should  have  known  that  letters  to

17  newspapers  are  sacrosanct  and  should  not  be  tampered  with.  He

18  knew  that  letters  to  Congress  and  the  Senate  should  not  be

19  tampered  with.  He  knew  that  letters  to  the  ICE  and  DHS  were

20  sacred  and  should  not  be  tampered  with.  He  knew  that  letters  to

21  the  embassy  should  not  be  tampered.  Hell,  he  even  knew  that  the

22  legal  documents  that  are  printed  in  the  library  where  they  are

23  produced  by  detainees  are  sacred  and  should  not  be  read,  copied

24  or  tampered  with  but  he  caused  all  of  the  above  to  be  read,

25  copied  and  tampered  with  by  his  employees,  **mostly  for  his  own**

1    material benefit because he and Garman used the proceeds of those

2    documents they invaded in their own particular needs.

3    **189.**    Plaintiff claims that Immigration and Customs Enforcement

4    knew that the documents submitted for copying by the Plaintiff

5    should not be copied and should not be faxed to his counsels, but

6    he allowed his staff to do just that. It is specifically pleaded

7    that the failure to train and failure to supervise resulted in

8    the denial of meaningful access to the Courts as Immigration and

9    Customs Enforcement not only allowed the reading of legal

10   material the Plaintiff submitted for copying, but allowed those

11   documents to be copied for Geo's use by their faxing the

12   documents to their lawyers, and allowed the documents to be kept

13   and stored by Geo in boxes in the warehouse where they were

14   accessible to Geo and ICE employees in violation of the

15   Plaintiff's rights to confidentiality.

16   **190.**    Plaintiff claims that the lack of training and

17   supervision by Immigration and Customs Enforcement caused the

18   Plaintiff injury through the fact that when the Plaintiff

19   directed mail to defendants, such as Immigration and Customs

20   Enforcement, with proper instructions to mail the letters First

21   Class Mail, **or**, in the alternative, alternative delivery to the

22   personal box of the defendant.

23   **191.**    Plaintiff claims that his rights have been injured by the

24   failure to train and supervise and through deliberate action to

25   deny his due process in that Immigration and Customs Enforcement

has approved THE GEO GROUP INC.'s employees mishandling of the Plaintiff's mail. It is the position of the Plaintiff that the mail must be placed in the First Class mail when it is designated.

192.     It is further the Plaintiff's claim that the First Class mail, must actually be given to the Post Office Person who arrives to collect the mail.

193.     It is the Plaintiff's claim that the only alternative to such mailing is to hand the letter directly to the person it is directed to or to place it into a box where it is general practice that the mail will be received by the person, such as Immigration and Customs Enforcement.

194.     What Immigration and Customs Enforcement has done and has encouraged is to allow Geo Employees to not place the letters into the mail, to return the letters and they then demand that the Plaintiff place the First Class Mail into the ICE box in the unit where that box is susceptible to opening by detainees.

195.     It is the Plaintiff's claim that when he mails documents to any person, including  Immigration and Customs Enforcement, the mail is to either be placed into the U.S. Mails as directed, or alternatively placed into the mailbox of  Immigration and Customs Enforcement or the other person the Plaintiff seeks to mail the letter to **especially** because these are legal defendants.

**196.**     Plaintiff claims that his due process has been violated by the failure to mail his documents and such failure is a source of recurring stress upon the Plaintiff.

**197.**     In fact, the Plaintiff claims that the American Correctional Association's Recommended Standards include a clause that allows for confidential communications with Immigration and Customs Enforcement, Clark, or any other custodian.

**198.**     Moreover, ICE National Standards include a clause that allow for confidential detainee communications with Immigration and Customs Enforcement and any other person who works in the facility where that person has a significant impact ability over the Plaintiff's conditions of confinement or confinement.

**199.**     Plaintiff claims that his rights have been violated by the deliberate returning of his mail, repeatedly, by Immigration and Customs Enforcement and through approval by Immigration and Customs Enforcement.

**200.**     Plaintiff claims that the recurring activities with his legal mail is done specifically and solely to harass, molest and punish the Plaintiff for maintaining legal actions in the Courts. In particular, the Plaintiff claims that the mail is returned repeatedly over and over again only to cause him to be late in his filings, to be late in his letters to legal entities and to prevent him from communicating with entities in a timely manner.

**201.**     Plaintiff claims that Immigration and Customs Enforcement has copies of the grievances and Tort Claim demands that were

filed in conjunction with all the matters herein but has failed to provide the Plaintiff with a copy of those documents in violation of the Freedom of Information Act and the Privacy Act and he maintains those copies of the documents solely to prevent the Plaintiff from receiving the documents to use in legal cases that are pending and in this case.

**202.** Exhibits to be provided during discovery will show that Immigration and Customs Enforcement has prevented copies of the documents that would provide for a showing of his denial of due process on all the items raised here.

**203.** Exhibits to be provided during discovery will show a document that shows that Immigration and Customs Enforcement's failure to train and supervise caused Geo employees to open, read, and copy a letter that was received by the facility for the Plaintiff. Such letter was from Angela Gonzalez, a person who was expressing her thanks for the Plaintiff's assistance to her sixty-two year old father. Immigration and Customs Enforcement authorized the opening, reading, copying and using of that letter, **without ever giving the Plaintiff a copy of the letter or envelope to keep.**

**204.** Immigration and Customs Enforcement construed the letter as being payment for legal services instead of a gift as it was. The letter stated, "Albino Guardiola has asked me to send this to you for helping him with his paperwork." Nothing in the letter stated that the Plaintiff had solicited this money. Nothing in

the letter indicated that the Plaintiff had charged Guardiola for this money, yet Immigration and Customs Enforcement allowed the Plaintiff's money to be taken by Geo. **The money was not returned to Angela Guardiola-Gonzalez.** The money order was just missing. However, on the date of 7-10-07 the same money order arrived in the mail to the Plaintiff. There was no return address and the post mark of the envelope was from Tacoma, indicating that the letter had been mailed in Tacoma. Angela Gonzalez resides in Yakima, some two or three hours away. Thus, it is improbable that Angela Guardiola Gonzales drove the distance and deposited the money order in the mail in Tacoma and what is more believable is that someone at the Northwest Detention Center placed the money order into the envelope at Tacoma. In any case, Immigration and Customs Enforcement should never have intercepted that money order for any purpose.

**205.**     Moreover, once the money order was received, Immigration and Customs Enforcement then held the money order and cashed the money order without the specific endorsement of the Plaintiff. In effect, the Plaintiff claims that Immigration and Customs Enforcement stole the forty dollars and used it for his own purposes because he cashed the money order without endorsement and illegally used the money order, just like he had a previously received thirty dollar money order where there were specific instructions that no money order should be cashed without the

1   signature endorsing the money order. In effect, Immigration and

2   Customs Enforcement committed theft.

3   **206.**      When the Plaintiff sought to gain the numbers off the

4   money order to lodge a complaint against Immigration and Customs

5   Enforcement with the United States Post Office, Immigration and

6   Customs Enforcement would not allow the Plaintiff to get the

7   serial numbers off the document, an act of obstruction of due

8   process and justice.

9   **207.**      Similarly, the Plaintiff, on or about in February of 2007

10  received a money order from his friend, Lyla Paul, who utilized

11  the pseudonym Amber Felix because she did not want to be bothered

12  by ICE. The money order was for 04. for a subscription to the Los

13  Angeles Times. When the money was received, Immigration and

14  Customs Enforcement questioned he receipt of the money order.

15  Then, when the Plaintiff sought that they send all money held by

16  Immigration and Customs Enforcement to his counsel, Keith Jordan,

17  that money order was missing from the set of money orders. Only

18  later did Immigration and Customs Enforcement state that the

19  money order was in their "evidence locker." These are not police

20  agents. Why is the Plaintiff's money order in an "evidence

21  locker."

22  **208.**      Further, the Plaintiff then wrote a letter to Guardiola

23  explaining certain things to her including the fact that he could

24  not accept money for working for Guardiola. **That letter was never**

25